# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JAMES G. JOHNSON, #299337, a/k/a James Grady-Lee Johnson, formerly, #5210, | ) ) ) ) |
| Plaintiff, | ) ) Civil Action No. 0:07-144-HFF-BM |
| v. | ) ) ) |
| MAJOR RALPH HUNTER; LIEUTENANT DAVID WASHINGTON, in their individual capacities, | ) **REPORT AND RECOMMENDATION** ) ) ) ) |
| Defendants. | ) ) |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on July 2, 2007. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on July 3, 2007, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to the motion for summary judgment on August 15, 2007,

1



to which the Defendants filed a reply memorandum on August 27, 2007. Defendants' motion is now before the Court for disposition.¹

### **Background and Evidence**

Plaintiff alleges in his verified Complaint², in toto, as follows:

> On November 28, 2006 I was informed by Sgt. Moses Carter that I, along with my roommate, Jamaal Duff needed to be restrained so that he could receive shaves. I then produced the policy that indicates that he's to follow directives in regards to haircuts/shaves. However, in the policy in also indicates that he may have a razor. I told Sgt. Carter that I would like my razor to shave with. He advised me that I "wasn't getting no fucking razor!" I along with my roommate complied. He was told that we were going to be next. Lt. Washington came to our cell and sprayed us and said "next time you'll comply." A couple of days later Major Hunter came to my cell and informed me that I better follow the rules or else, an he then pulled out his gas and smiled at me.

Plaintiff seeks monetary damages, as well as a transfer from the institution where he was housed. See generally, Verified Complaint.

In support of summary judgment in the case, the Defendant David Washington has submitted an affidavit wherein he attests that he is a lieutenant at the Allendale Correctional Institution (ACI), where Plaintiff is housed. Washington attests that on November 28, 2006, he was notified by Sgt. Moses Carter that Plaintiff and another inmate, Jamal Duff, who were both in the special management unit (SMU), Cell A-112, had refused to be retrained for their haircuts and

---

¹This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

²In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4ᵗʰ Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

2



showers. Washington attests that he went to the cell and gave both inmates several verbal directives to step to their cell door and be restrained, but that both inmates refused to be restrained, and also stated that they were refusing to get a haircut and shower. Washington attests that, due to these inmates' actions, he determined that it was necessary to utilize chemical munitions in an effort to control these individuals as it was clear that bringing them under control was vital for security purposes. Washington attests that allowing inmates to openly defy security personnel can lead to a break down of security and safety within the SMU if they are allowed to succeed with their defiance.

Washington attests that the use of chemical munitions allows officers to induce inmates to bring their behavior in line with proper security mandates without involving a physical encounter. Washington attests that the first time he used his chemical munition canister, Plaintiff and Duff blocked the burst by placing a mattress in front of the window of their cell. Washington attests that Sgt. Carter then pulled the mattress aside, allowing him to administer a second burst which struck them both in their facial areas. Washington attests that, as a result, both inmates complied with the guards' directives and they were restrained and received their haircuts and showers.

Finally, Washington attests that, pursuant to policy, both inmates were subsequently seen by a nurse and were afforded water in their cell. No medical treatment was required and he [Washington] saw no evidence of any injury on the part of the Plaintiff or the other inmate. See generally, Washington Affidavit. See also Exhibit (Court Document 15-5) [SCDC Health Services Medical Summary for November 28, 2006], which states that Plaintiff was seen by a licensed nurse practitioner who made the following entry:

> at evening medication pass I/M was gassed. No sign of distress minor irritation. I/M afforded water for dilution to temporarily ease the effects of the gas. I/M informed that the effects of the gas would have to wear off. C/Os were instructed to report to medical any respiratory difficulties or any problems they might note.

3



See Exhibit (Health Services Medical Summary).

The Defendants have also submitted an affidavit from Ann Hallman, who attests that she is an inmate grievance administrator with the South Carolina Department of Corrections. Hallman attests that the inmate grievance system is the mechanism utilized by inmates to bring resolution to incidents which they perceive to negatively impact them or to identify situations which they believe to be inequitable. This system allows the inmate to pursue the grievance through the agency (the SCDC), and if the final decision rendered by the agency is adverse to the inmate, he can pursue the matter with the South Carolina Administrative Law Court, and can also appeal pursuant to the Administrative Procedures Act.

Hallman attests that Plaintiff signed a Step 1 grievance on November 30, 2006 (No. ACI-1357-06) which was received by the grievance office on December 1, 2006. In this grievance, Plaintiff complains that he and his roommate were both exposed to chemical munitions even though they had agreed to be shaved. Hallman attests that Plaintiff's Step 1 grievance was denied after an investigation, following which Plaintiff indicated on January 16, 2007 that he did not accept the Warden's decision and that he wanted to appeal. Hallman attests that thereafter, on January 17, 2007, a Step 2 appeal of grievance ACI-1357-06 was received by the Grievance Office. However, this grievance complained that Department policy on use of force provides that when force is needed to be applied to get an inmate to shave, it will be recorded, but that no recording was made of this incident. Hallman attests that this was not the same subject raised by Plaintiff in his Step 1 grievance, and that therefore there was no actual appeal of the claim denied in the Step 1 grievance. Hallman further attests that no grievances have been filed with respect to the Defendant Hunter's allegedly having told the Plaintiff that he had "better follow the rules" and had pulled out a gas

4



canister and smiled at the Plaintiff. See generally, Hallman Affidavit.

Defendants have also attached copies of Plaintiff's Step 1 and Step 2 grievances, which reflect Plaintiff's complaints and allegations as are stated by Hallman in her affidavit. Plaintiff's Step 1 grievance is dated November 30, 2006, and is date stamped as having been received by the Grievance Section on December 1, 2006, with a decision being rendered by the Warden on January 16, 2007. Plaintiff indicated on this grievance form, also on January 16, 2007, that he did not accept the Warden's decision and wished to appeal. Plaintiff's Step 2 grievance form was then also dated January 16, 2007, and was received by the Grievance Branch on January 17, 2007. Significantly, Plaintiff's Complaint in this action is dated January 11, 2007, and was received and filed in this Court on January 16, 2007.

Plaintiff did not submit any evidence with his filing in opposition to summary judgment, nor did the Defendants submit any additional evidence as part of their reply memorandum.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal



construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Defendants assert in their motion, inter alia, that this case is subject to dismissal for failure of the Plaintiff to exhaust his administrative remedies with respect to his claims prior to bringing this lawsuit in federal court, and the undersigned is constrained to agree. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions[3] under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); *see* Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001) [exhaustion required even though plaintiff claimed futility]; Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) [exhaustion required even though plaintiff claimed he was afraid]; see also Claybrooks v. Newsome, No. 00-7079, 2001 WL 1089548 (4th Cir. Sept. 18, 2001) (unpublished opinion) [applying Booth v. Churner

---

[3] There is no definition for the term "prison conditions" contained in § 1997e. The Sixth Circuit utilizes a definition derived from 18 U.S.C. § 3262:

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

Hartsfield v. Vidor, 199 F.3d 305, 308 (6th Cir. 1999) (quoting 18 U.S.C. § 3262(g)(2)); Neal v. Goord, 267 F.3d 116, 2001 WL 1178293 (2d Cir., Oct 04, 2001) (quoting Lawrence v. Goord, 238 F.3d 182, 185 (2d Cir. 2001) (*per curiam*)).

6



to affirm district court's denial of relief to plaintiff]. Accordingly, before Plaintiff may proceed with his claim in this Court, he must first have exhausted his administrative remedies through the prison grievance process.[4]

The Fourth Circuit has held that it is the Defendants who have the burden of showing that a Plaintiff failed to exhaust his or her administrative remedies. See <u>Anderson v. XYZ Correctional Health Services, Inc.</u>, 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]. Here, the Defendants have both pled this affirmative defense (<u>see</u> <u>Answer</u>, 12th Defense), and have also submitted evidence to show that Plaintiff failed to exhaust his administrative remedies prior to bringing this lawsuit. Hallman attests in her affidavit that Plaintiff did not grieve the claim he asserted in his Step 1 grievance, nor is there any evidence that, even if the Court were to assume for purposes of summary judgment that Plaintiff's Step 2 grievance addressed the same issue as his Step 1 grievance, that that Step 1 grievance was resolved prior to the filing of this lawsuit. As previously noted, the Complaint Plaintiff filed to initiate this action is itself dated prior to the final resolution of his Step 1 grievance, and was as a result obviously filed before he even submitted a Step 2 grievance.

Further, Plaintiff concedes in his verified Complaint that at the time of the filing of the Complaint had not received a final answer or determination concerning his grievance. <u>See</u>

---

[4] In orders filed on May 9, 1996, this Court certified that the inmate grievance procedure established by the South Carolina Department of Corrections met the standards required by 42 U.S.C. § 1997e(a)(2). *See* the orders filed in Misc. No. 3:96-MC-83-2 and Misc. No. 3:96-MC-84-2 (D.S.C., May 9, 1996), which incorporate by reference SCDC PS-10.01 (May 1, 1996). Requiring Plaintiff to proceed in the SCDC administrative process before pursuing any federal remedies he may have provides him with an opportunity to prevail within the SCDC system that will be lost if the federal court proceeds without requiring that state remedies be exhausted.

7



Complaint, § II. Even if Plaintiff has by now completed his grievance process, of which there is no evidence, this would not be sufficient to save the Plaintiff's claims from summary judgment. Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending.]; Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) [Prisoner "may not exhaust administrative remedies during the pendency of the federal suit."]; Erby v. Kula, 98 Fed.Appx. 405, 407 (6th Cir. 2004) [State prisoner's letter to state prison director did not exhaust his administrative remedies, as required, where prisoner sent his letter during pendency of federal suit.].

Finally, in response to the Defendants' motion for summary judgment and exhibits, Plaintiff has failed to submit any evidence to show that he exhausted his administrative remedies with respect to his claims, or indeed even to address this issue in his response.  Therefore, this case is subject to summary judgment. Booth, 532 U.S. at 741; *cf.* Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must purse the administrative remedy or be precluded from seeking relief in the courts"].

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**, without prejudice, for failure of the Plaintiff

8



to exhaust his administrative remedies.

        The parties are referred to the Notice Page attached hereto.

                                            Bristow Marchant
                                            United States Magistrate Judge

Columbia, South Carolina

September 4, 2007



9

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

10

